**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MARIA PASSARO-HENRY, M.D. | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:10-cv-450 (JCH) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALLSTATE INSURANCE CO., | : | |
| ALLSTATE INDEMNITY CO., | : | DECEMBER 15,  2010 |
| AND SMITH & BRINK, P.C. | : | |
| Defendants. | : | |

**RULING RE: DEFENDANTS' MOTIONS TO DISMISS COUNTS FOUR, FIVE AND SIX**
**[DOC. NOS. 19 & 23]**

**I.      BACKGROUND**

This action was filed in response to a prior lawsuit involving the parties.  The

plaintiff here, Maria Passaro-Henry, is a medical doctor and a principal in a medical

practice, Advanced Healthcare Professionals ("AHP").  As alleged in the Complaint,

Passaro-Henry and AHP routinely submitted various forms and medical invoices to

defendants Allstate Insurance Co. and Allstate Indemnity Co. (jointly referred to here as

"Allstate") seeking reimbursement for medical services covered under Allstate

insurance policies.  In January 2008, Allstate brought an action (the "Prior Action")

against Passaro-Henry, AHP, and others, claiming that they had engaged in a scheme

to defraud Allstate by submitting fraudulent and inflated medical invoices.

After the Prior Action was dismissed, Passaro-Henry initiated the present action

against Allstate and Allstate's counsel in the Prior Action, Smith & Brink, P.C.  Passaro-

Henry claims that Allstate and Smith & Brink had no legitimate basis for suing her, that

-1-

they did so in order to intimidate and harass her, and that by doing so they damaged her practice and her professional reputation. Passaro-Henry's Complaint contains six counts. Counts One, Two and Three sound in statutory and common law vexatious litigation. Counts Four, Five and Six, respectively, sound in abuse of process, violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), and defamation.

Allstate and Smith & Brink each filed a motion to dismiss Counts Four, Five, and Six for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). In support of their motions, Allstate and Smith & Brink raise substantially similar arguments, and, for the most part, their motions call for the same disposition. Counts Four (abuse of process) and Six (defamation) should be dismissed with respect to Allstate and Smith & Brink. But as to Count Five (CUTPA), there is a legally significant difference between Allstate and Smith & Brink. That Count should be dismissed only with respect to Smith & Brink. Accordingly, Smith & Brink's Motion (Doc. No. 19) is granted, and Allstate's motion (Doc. No. 23) is granted in part and denied in part.

## II. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim tests only the adequacy of the complaint. See United States v. City of New York, 359 F.3d 83, 88 (2d Cir. 2004). In deciding such a motion, the court must take the allegations of the complaint to be true and construe them in a manner favorable to the plaintiff. Hoover v. Ronwin, 466 U.S. 558, 587 (1984); Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997); McEvoy v. Spencer, 124 F.3d 92, 95 (2d Cir. 1997). The court must draw all reasonable inferences in the plaintiff's favor. See, e.g., Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006); Leibowitz v. Cornell Univ., 445 F.3d 586, 591-92 (2d Cir. 2006).

The court's analysis is guided by Fed. R. Civ. P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This Rule "requires factual allegations sufficient 'to raise a right to relief above the speculative level.'" Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The "plausibility standard" in Twombly "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555). Bald assertions, and mere conclusions of law, do not suffice to meet the plaintiff's pleading obligations. See Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 344 (2d Cir. 2006). Instead, the plaintiff is obliged to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007), rev'd on other grounds sub. nom. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).

## III.    THE COMPLAINT

### A.    General Allegations

The general, factual allegations of the Complaint recount the proceedings in the Prior Action which took place before another Judge of this Court. According to the Complaint, Allstate, through its counsel Smith & Brink, instituted the Prior Action against Passaro-Henry, AHP and a number of AHP's owners and employees. In the Prior Action, Allstate accused Passaro-Henry and her co-defendants of, among other things, rendering treatment solely for the purpose of incurring additional expense, submitting

false documentation to Allstate, and seeking reimbursement for procedures not rendered. Complaint ¶ 10. Allstate sought compensatory and punitive damages and injunctive relief. Id. ¶ 13.

Early in the Prior Action, Passaro-Henry and her co-defendants proposed to file a motion to dismiss for failure to make the specific factual allegations of fraud required by Fed. R. Civ. P. 9(b). Complaint ¶ 14. The court (Arterton, J.) held a pre-filing conference, during which the court alerted Allstate that it was "on notice" of the alleged deficiencies in its complaint, and in a proposed amended complaint. Id. ¶ 16. The court warned Allstate that, if it chose to proceed without further amendment to the pleadings, it would "not [be] given leave to amend if the motion to dismiss is granted." Id. ¶ 16. Allstate chose to file a revised amended complaint, which Passaro-Henry describes as "in form and substance substantially similar to the proposed amended pleading" discussed at the pre-filing conference. Id. ¶ 17. Passaro-Henry and her co-defendants filed a motion to dismiss. Id. ¶ 18. The court granted the motion in "a lengthy opinion," id. ¶ 19, holding that Allstate failed to meet the heightened pleading standard for fraud. Id. The court denied Allstate leave to amend, id. ¶ 22, and Allstate made an unsuccessful motion for reconsideration. Id. ¶ 23.

### B. Allegations of Count Four: Abuse of Process

Under the heading of Count Four, Passaro-Henry alleges abuse of process. Paragraphs 24 and 25 of Count Three, which are incorporated into Count Four by reference, allege that the Prior Action was "commenced and/or prosecuted by Allstate and [Smith & Brink] without probable cause" and with reckless disregard for the truth. Complaint ¶¶ 24-25. According to the Complaint, "[n]o reasonable insurance company

-4-

or its counsel, based upon the facts known or available following a diligent and reasonable investigation, could form a bona fide belief in the existence of facts essential under the law" for the claims in the prior action. Id. ¶ 24. Passaro-Henry claims that the Prior Action "was primarily intended to vex, annoy and harass Passaro-Henry, her business partners and affiliates, and was intended to, and did in fact, cause substantial disruption to AHP's business generally, and Passaro-Henry's professional activities specifically." Id. ¶ 27. She further alleges that Allstate and Smith & Brink "used the Prior Action for an improper purpose; to wit, to intimidate and discourage the Defendants in the Prior Action, including Passaro-Henry, from submitting future claims to Allstate, and to cause interruption to AHP's business and financial harm to its principals . . . ." Id. ¶ 28.

### C.     Allegations of Count Five: CUTPA

In Count Five, Pasaro-Henry alleges violation of CUTPA (Conn. Gen. Stat. § 42-110a et seq.). Passaro-Henry claims that Allstate and Smith & Brink "failed to properly and thoroughly investigate the basis for the factual allegations asserted against Passaro-Henry" in the Prior Action, Complaint ¶ 34; that they commenced and prosecuted the prior action in bad faith and for the sole purpose of intimidating and harassing Passaro-Henry, id. ¶ 35; that "Allstate has brought similar actions against other healthcare professionals," id. ¶ 38; and that "the actions and conduct of Allstate, as aforesaid, were performed in the general course of its trade or business and caused financial injury and damage to [Passaro-Henry] and others against whom similar or identical claims were made in the past." Id. ¶ 37.

### D. Allegations of Count Six: Defamation

In Count Six of the Complaint, Passaro-Henry states that the allegations in the Prior Action accused her of "improper conduct and a lack of skill and integrity in the conduct of her profession," and she asserts that these allegations were "libelous" and "calculated" to cause injury to her. Complaint ¶¶ 34-35. Passaro-Henry does not identify any defamatory statements other than those made in the course of the Prior Action.

## IV. DISCUSSION

### A. Count Four: Abuse of Process

Under Connecticut law, "[a]n action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it is not designed." Larobina v. McDonald, 274 Conn. 394, 403 (2005) (internal quotation omitted). "[T]he gravamen of the action for abuse of process is the use of legal process . . . against another primarily to accomplish a purpose for which it is not designed." Id. (quoting Restatement Second (1977) of Torts, § 682). Abuse of process requires conduct (1) occurring after the issuance of process and (2) intended primarily to accomplish a purpose for which the process is not designed. See Doctor's Associates, Inc. v. Weible, 92 F.3d 108, 114 (2d Cir. 1996).

Allstate and Smith & Brink both argue that Passaro-Henry fails to state a claim for abuse of process because she has not alleged any conduct occurring after the commencement of the Prior Action. As her first response, Passaro-Henry contends that misconduct after the issuance of process is "a requirement of proof not pleading."

-6-

This position is not well-taken.

There is no disputing that conduct after the issuance of process is an essential element of abuse of process.  See Doctor's Assocs., 92 F.3d at 114 ("In short, no matter what misconduct by the tortfeasor occurs before the commencement of suit, it is not, in itself, an abuse of process because there is not yet process to abuse.").  Indeed, Passaro-Henry quotes passages from authorities that expressly confirm the importance of this element.  E.g., Plaintiff's Objection to Smith & Brink's Motion to Dismiss (Doc. No. 36) ("Objection to Smith & Brink") at 15 ("The purpose for which the process is used, once it is issued, is the only thing of importance.") (quoting Lewis Truck & Trailer, Inc. v. Jandreau, 11 Conn. App. 168, 170-71 (1987)).

The requirement of post-issuance misconduct is essential to the distinction between abuse of process and vexatious litigation, which Passaro-Henry also claims in this action.  See, e.g., Schaeffer v. O.K. Tool Co., 110 Conn. 528, 148 A. 330, 333 (1930) ("The distinction between malicious prosecution or vexatious suit and abuse of process, as tort actions, is that in the former the wrongful act is the commencement of an action without legal justification, and in the latter it is in the subsequent proceedings, not in the issue of process, but in its abuse."); Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994) ("While malicious prosecution concerns the improper issuance of process, the gist of abuse of process is the improper use of process after it is regularly issued.") (citation omitted).

Passaro-Henry cites no authority for her contention that she need not plead this element before she attempts to prove it.  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.

It follows that Passaro-Henry's allegations only that the Prior Action was <u>commenced</u> without probable cause and with reckless disregard for the truth are inadequate to state a cause of action for abuse of process. Passaro-Henry must allege some misuse <u>after</u> process was issued.

Passaro-Henry next argues that she has, in fact, pled misconduct after the issuance of process. The only allegations that fit this bill are those asserting that Allstate and Smith & Brink <u>continued to prosecute</u> a frivolous action in order to vex, harass, and embarrass Passaro-Henry and to disrupt her business.[1] So, the question is whether such allegations are adequate to support a cause of action for abuse of process.

Allstate and Smith & Brink both argue that these allegations are insufficient because they do not identify conduct intended to cause injury outside the contemplation of normal litigation. Allstate and Smith & Brink rely extensively on the Connecticut Supreme Court's decision in <u>Mozzochi v. Beck</u>, 204 Conn. 490 (1987). In affirming dismissal of an abuse of process claim, the <u>Mozzochi</u> Court gave particular attention to what the plaintiff had not alleged:

> There is no claim that defendants undertook any action
> outside of the normal course of the proceedings in the
> Muszynski case itself. For example, there is no claim that
> the defendants used the pleadings or the process in the
> Muszynski case as leverage to coerce the plaintiff to pay a
> debt or surrender property unrelated to that litigation.
> Similarly, there is no claim that the defendants used

---

[1] Passaro-Henry states that she intends to proffer evidence of additional conduct that she did not plead in the Complaint, including the filing of liens on her house and the pursuit of an appeal. Obj. to Smith & Brink at 16. "Because a Rule 12(b)(6) motion tests only the adequacy of the complaint," <u>City of New York</u>, 359 F.3d at 88, the court cannot rely on these un-pled allegations to sustain this cause of action.

-8-

unreasonable force, excessive attachments or extortionate
methods to enforce the right of action asserted in the [prior]
case.  Finally, there is no claim that the defendants' purpose
in pursuing the Muszynski case was to gain any collateral
advantage extraneous to its merits.  The only injury of which
the plaintiff complains is that the defendants improperly
continued to pursue the Muszynski case in order to enrich
themselves and Muszynski at the plaintiff's expense.

Mozzochi, 204 Conn. at 493-94.  The Mozzochi Court concluded that such allegations

do not state a cause of action for abuse of process:

[The complaint's] key allegation is that the defendants
continued to pursue litigation "for an unlawful ulterior
purpose, to wit: to inflict injury upon the plaintiff and to enrich
themselves and their said client although they knew their
said lawsuit was without merit."  So general an allegation of
abuse does not satisfy the requirement of showing the use
of legal process primarily to accomplish a purpose for which
it is not designed. . . . The complaint in no way distinguishes
between the costs and benefits ordinarily associated with the
pursuit of litigation and the burdens that the defendants in
this case allegedly improperly inflicted upon the plaintiff.

Id. at 497-98 (internal quotation omitted; emphasis in original).

Passaro-Henry argues that her allegations go further than those deemed

inadequate in Mozzochi.  She points in particular to her allegations that the Prior Action

was intended to "vex, annoy and harass"; to "cause interruption" and "substantial

disruption" to her practice; to "intimidate and discourage" her from "submitting future

claims to Allstate"; and to cause "financial harm."  Complaint ¶¶ 27, 28.  It is not clear

that these are all improper motives for bringing an action alleging fraud and corrupt

business practices.  A plaintiff filing such an action in good faith might intend to disrupt

the allegedly corrupt business, to cause it financial harm, and to discourage it from

engaging in the allegedly wrongful activities.  In any case, these motives alone do not

give rise to a claim for abuse of process. See Doctor's Assocs., 92 F.3d at 114 ("[A] party does not abuse the legal process merely by filing suit. This is true regardless of the plaintiff's motive."); Lodges 743 & 1746 v. United Aircraft Corp., 534 F.2d 422, 465 (2d Cir.1975) ("Abuse of process requires more than simply improper motive. There must also be some action taken to utilize the court's processes for collateral purposes not related to the suit in question . . . ."). The only thing that might distinguish the Prior Action from a non-actionable suit with similar aims is the alleged fact that the Defendants prosecuted the Prior Action when they "knew their said lawsuit was without merit." Mozzochi, 204 Conn. at 498. However, as the court held in Mozzochi, "[s]o general an allegation of abuse does not satisfy the requirement of showing the use of legal process primarily to accomplish a purpose for which it is not designed." Id.[2]

The cases relied on by Passaro-Henry do not cast doubt on this conclusion. Indeed, Passaro-Henry misreads Fiondella, Inc. v. Reiner, Reiner & Bendett, No. HHDCV085025357S, 2009 WL 5342490 (Conn. Super., Dec. 4, 2009), which she describes as holding that "alleging that a complaint was filed for an improper purpose is sufficient to state a claim for abuse of process." Opp. to Allstate at 9. In Fiondella, the court followed Mozzochi and dismissed an abuse of process claim. The court specifically held that pursuing a frivolous lawsuit with ulterior motives does not constitute abuse of process:

---

[2] The court notes that Mozzochi involved an abuse of process claim against an attorney for a third party and that the Connecticut Supreme Court announced that the pleadings in such cases were subject to heightened scrutiny. Mozzochi, 204 Conn. at 497 (holding that the viability an abuse of process claim against an attorney for a third party "turns on the specificity of its allegations"). However, it does not appear that the result in Mozzochi depended on this heightened scrutiny, and its reasoning and holding has subsequently been applied in cases against non-attorneys. See, e.g., Doctor's Assocs., 92 F.3d at 114; Equality, Inc. v. I-Link Communications, 76 F. Supp. 2d 227, 231 (D. Conn. 1999).

> The allegations, read in the light most favorable to the
> plaintiffs, simply allege that the defendants' motives were to
> benefit [their client] in pursuing a frivolous claim against the
> plaintiffs, to obtain an ulterior benefit of fame to their new
> practice group, and possibly to gain an incidental benefit of
> spite by embarrassing the plaintiffs. Such ulterior benefits
> and incidental motives are insufficient to establish an action
> for abuse of process.

Id. at *6; see also id. at *6, n.11 ("In light of the plaintiffs' arguments, it is important to

reiterate that the initiation and maintenance of a frivolous lawsuit, while perhaps

actionable under another legal theory, is not sufficiently ulterior to constitute an abuse

of process under the Mozzochi criteria."). The court is puzzled by plaintiff's reliance on

this case.

There is little comparison between this case and Raymond Road Assoc. v.

Taubman Centers, 47 Conn. L. Rprtr. 313, 2009 WL 939848 (Conn. Super., March 5,

2009). There, owners and operators of an existing shopping mall allegedly sought to

prevent the development of a competing commercial center by paying for and

controlling 12 actions brought in the name of local residents. Id. at *1, *5. It was

alleged that the defendants specifically used those actions to discourage a premier

retailer, who was not a party in those cases, from committing to a location in the new

development. Id. at *1. In other words, the defendants in Raymond Road allegedly

paid to assert rights conferred to others in an effort to insulate their own business from

competition and to influence the actions of non-parties. Id. at *5. Here, Allstate sought

to assert its own claims in order to influence the conduct of the parties it brought before

the court in ways that were directly related to the merits of its claims. Even assuming

that Allstate's action was meritless, as Passaro-Henry alleges, this is not sufficient to state a claim for abuse of process.

**B.     Count Six:  Defamation**

Passaro-Henry also fails to state a claim for defamation.  Passaro-Henry's allegations of defamation relate entirely to the "libelous allegations and claims made by Allstate and its counsel in the Prior Action."  Complaint ¶ 35.  Passaro-Henry fails to allege that any potentially defamatory statements were made outside of the context of the Prior Action.

Statements made by defendants in the course of the Prior Action are subject to an absolute litigation privilege.  "It is well settled that communications uttered or published in the course of judicial proceedings are absolutely privileged [as] long as they are in some way pertinent to the subject of the controversy."  Hopkins v. O'Connor, 282 Conn. 821, 830-31 (2007).  "The effect of an absolute privilege is that damages cannot be recovered for the publication of the privileged statement even if the statement is false and malicious. . . . The absolute privilege for statements made in the course of a judicial proceeding applies equally to defamation claims . . . ."  Gallo v. Braille, 284 Conn. 459, 465-66 (2007) (citing Craig v. Stafford Construction, Inc., 271 Conn. 78, 84 (2004); DeLaurentis v. New Haven, 220 Conn. 225, 265 (1991)).  "The privilege also applies to statements made in pleadings or other documents prepared in connection with a court proceeding."  Alexandru v. Dowd, 79 Conn. App. 434, 438-39 (2003).

Passaro-Henry argues that it would not be appropriate to hold that the privilege applies at this stage because it "would require the court to assume facts in favor of the

defendants." Plaintiff's Objection to Allstate's Motion to Dismiss (Doc. No. 35) ("Objection to Allstate") at 16. To support this argument, Passaro-Henry cites cases indicating that it is sometimes difficult to determine whether or not the privilege should apply. E.g., Gallo, 284 Conn. at 470 ("[I]t is not always easy to determine whether a statement has been made in the course of a judicial proceeding"); Kelly v. Bonney, 221 Conn. 549, 573 (1992) ("[I]n instances where communications are made to alleged potential witnesses, the court must particularly evaluate the factual circumstances peculiar to each case to determine whether application of [absolute] privilege is warranted" (internal quotation omitted)); Wolinsky v. Std. Oil of Connecticut, 3:08-cv-832 (MRK), 2008 WL 3984593, at *2 (D. Conn. Aug. 25, 2008) ("Because we are at an early stage of this case and the facts relating to the Standard Oil letter are not all known, dismissal as a matter of law is inappropriate.").

Even if it is sometimes difficult to determine whether the privilege applies, this is not such a case. The Connecticut Supreme Court has consistently held "that a statement is privileged if it is made in the course of a judicial proceeding and relates to the subject matter of that proceeding." Gallo, 284 Conn. at 470. In the present case, the court can easily reach the conclusion, based on a fair reading of the Complaint, that these conditions are met, even while taking all of the allegations in the Complaint to be true and granting all reasonable inferences in favor of the plaintiff. The Complaint fails to allege any conduct whatsoever occurring outside of the course of the Prior Action. Indeed, each statement by Allstate and Smith & Brink is specifically alleged to have been made "in the Prior Action." See, e.g., Complaint ¶ 10 ("Allstate claimed in the Prior Action that . . . ."), ¶ 11 ( "In the Prior Action, Allstate maintained that . . . ."), ¶ 34

-13-

("The allegations set forth in the Complaint and the Amended Complaint in the Prior Action . . . ."), ¶ 35 (". . . libelous allegations and claims made by Allstate and its counsel in the Prior Action . . ."). Furthermore, there is no allegation that these statements were not directly relevant to the Prior Action. Indeed, the only statements alleged to have been made were some of the central allegations of the Prior Action, and thus they were indisputably relevant to that proceeding.

This case is strikingly different from Wolinsky, on which Passaro-Henry relies. There, the plaintiff alleged that the defendant had made statements not in a court proceeding, but about a court proceeding in a letter mailed to the defendant's employees. Wolinsky, 2008 WL 3984593, at *1. There, the court needed more facts to determine whether these out-of-court statements were privileged. Id. at *2. Here, the Complaint simply does not allege any potentially, unprivileged statement.

Finally, Passaro-Henry asserts that "discovery is necessary to determine where, other than in court pleadings and statements, the defendants disclosed the allegations." Objection to Allstate at 16. However, the "purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists." Abrahams v. Young & Rubicam, 979 F. Supp. 122, 128-29 (S.D.N.Y. 1997) (quoting Stoner v. Walsh, 772 F. Supp. 790, 800 (S.D.N.Y. 1991)). As in Abrahams, "Plaintiff is not entitled to conduct discovery concerning whether [she] was defamed." 979 F. Supp. at 128-29. Therefore, Passaro-Henry's allegations are insufficient to state a claim for defamation.

### C.    Count Five: Violation of CUTPA

With respect to Count Five, defendants' motions require separate treatment.

-14-

Smith & Brink argues that CUTPA applies to attorney conduct only in the entrepreneurial side of their business, such as advertising and solicitation, and not to their conduct in advising and representing clients. With this argument unavailable to it, Allstate argues that Passaro-Henry's allegations fail because they relate to privileged conduct and because they involve conduct that is merely incidental to Allstate's primary trade. These arguments are addressed in turn.

### 1. Smith & Brink

CUTPA addresses a wide range of deceptive and unfair business practices, but the Connecticut Supreme Court has held that it does not apply to every aspect of legal practice. Suffield Development Assocs. v. National Loan Investors, L.P., 260 Conn. 766, 781-82 (2002). Suffield presented a CUTPA claim against a law firm that had, on behalf of its client, obtained an allegedly excessive writ of execution against the plaintiff. Reviewing prior cases, the Connecticut Supreme Court held that "only the entrepreneurial aspects of the practice of law are covered by CUTPA." Id. at 781 (quoting Beverly Hills Concepts, Inc. v. Schatz & Schatz, Ribicoff & Kotkin, 247 Conn. 48, 79 (1998)). The Court concluded the allegations there could not support a CUTPA claim "because obtaining an execution on a judgment relates to the representation by the defendant attorney and law firm of their client and not to the entrepreneurial aspect of practicing law." Suffield Dev. Assocs., 802 A.2d at 781-82.

The Suffield Court explained its rationale:

> Providing a private cause of action under CUTPA to a
> supposedly aggrieved party for the actions of his or her
> opponent's attorney would stand the attorney-client
> relationship on its head and would compromise an attorney's
> duty of undivided loyalty to his or her client and thwart the

> exercise of the attorney's independent professional
> judgment on his or her client's behalf.

Id. at 783-84 (quoting Jackson v. R.G. Whipple, Inc., 225 Conn. 705, 727 (1993)).

The allegations of the Complaint relate entirely to Smith & Brink's representation of Allstate, their client in the Prior Action. Nonetheless, Passaro-Henry argues that dismissal is "premature" because discovery is needed to determine whether "Smith & Brink participated in a nationwide scheme to intimidate and harass individuals similar to the Plaintiff" and "whether Smith & Brink publicized its efforts" in the Prior Action. Objection to Smith & Brink at 11. Whether or not these facts, if established, could support a CUTPA claim against a law firm, they are not alleged in the Complaint. As noted above, "the purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists." Abrahams, 979 F. Supp. at 128-29. The Complaint fails to state a cause of action for violations of CUTPA against Smith & Brink.

### 2. Allstate

Allstate raises two arguments for dismissal of Passaro-Henry's CUTPA claim. First, Allstate argues that the absolute privilege against defamation claims should be extended to cover the CUTPA claim because Passaro-Henry's CUTPA claim is "based on the same conduct on which Plaintiff bases her defamation claims." Allstate's Memorandum (Doc. No. 24) at 18. But this argument mischaracterizes Passaro-Henry's allegations. As described above, the CUTPA allegations contain no reference to the making of defamatory statements. Instead, they allege that Allstate failed to investigate its claims (Complaint ¶¶ 34-35), that it brought the Prior Action in bad faith

for the purpose of intimidating Passaro-Henry and her co-defendants from filing claims (id. ¶ 35), and that Allstate has filed similar suits against other healthcare professionals (id. ¶ 38).  In short, Passaro-Henry alleges that Allstate violated CUTPA not by making privileged statements, but by filing a pattern of frivolous lawsuits in order to dissuade healthcare professionals from submitting claims.  There is no basis for extending the privilege for statements made in the course of a judicial proceeding to such conduct.

Second, Allstate notes that the Connecticut Appellate Court has held that "a CUTPA violation may not be alleged for activities that are incidental to an entity's primary trade or commerce."  McCann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc., 93 Conn. App. 486, 523, cert. denied, 277 Conn. 928 (2006).  Allstate asserts that this holding applies here because Allstate "is not engaged in the business of interfering with medical practices or practitioners, or filing lawsuits for that matter," Allstate Mem. at 18, and because Passaro-Henry does not allege that "litigation is Allstate's primary trade or commerce."  Allstate's Reply (Doc. No. 41) at 6.

Allstate's Motion raises the question of how the holding in McCann should apply when the conduct underlying a CUTPA claim is litigation and the defendant is not a business primarily engaged in litigation, e.g., a law firm.  Under Allstate's logic, a CUTPA claim could be based on prior litigation only if litigation is the defendant's primary trade.  (Though, in that case, the claim would in all likelihood be barred by Suffield.  See, supra, at 15-16.)  In support of this broad approach, Allstate relies on SNET Information Services, Inc. v. Russell, where the Superior Court of Connecticut struck a CUTPA counterclaim in a suit for breach of contract brought by the seller of advertising space against the purchaser, because the seller's primary trade was

advertising, not litigation.  48 Conn. L. Rptr. 20, 2009 WL 2035248, at *3 (Conn. Super.,

June 11, 2009).

There are two reasons for caution about the broad approach of Russell.  First, in

a number of other cases, the rule in McCann has been given a much more limited

reading.  While Connecticut courts have dismissed CUTPA claims on this basis where

the allegations raise an isolated issue that is clearly distinct from the defendant's

primary line of business, they have not done so when the allegations assert that the

conduct bears an adequate connection to that primary trade.  Compare McCann, 93

Conn. App. at 523 (sale of real property on which an automobile dealership had been

located was incidental to the automobile dealership's business); Kelly v. Noble

Environment Power, LLC, 2009 WL 3087217, at *9 (Conn. Super., Sept. 2, 2009)

(employment dispute with independent contractor was incidental to defendant's

business of designing and building windparks), with Osberg v. Yale University, 2009 WL

659072, at *6 (Conn. Super., Feb. 11, 2009) (where University required fine arts

students to rent a studio and an apartment from the University as a condition of

matriculation, performance of the rental contracts was not incidental to the University's

primary business of education), and Michael J. Hamm, III Property v. Laidlaw Transit,

Inc., 2008 WL 4150199, at *9 (Conn. Super., Aug. 20, 2008) (distinguishing McCann

where defendant was alleged to have engaged in a pattern of contaminating and then

vacating the properties it leased to maintain and repair its fleet of buses).  In the latter

cases, although the conduct at issue can be described in a way that puts it outside the

defendant's primary trade, strictly construed, the conduct is still linked to that trade, and

the allegations still implicate the manner in which the defendant carries out that primary trade.

Second, Allstate's broad approach would put McCann on a collision course with a well-developed body of caselaw limiting, and in some cases permitting, CUTPA claims based on prior lawsuits. Drawing on the Noerr-Pennington doctrine and the underlying First Amendment concerns, the Second Circuit and the Appellate Court of Connecticut have established a limited rule that "the filing of a single non-sham lawsuit . . . cannot form the basis of a claim under CUTPA . . . ." Suburban Restoration Co. v. ACMAT Corp., 700 F.2d 98, 102 (2d Cir. 1983); Zeller v. Consolini, 59 Conn. App. 545, 553-54 (2000); Ancona v. Manafort Bros., Inc., 56 Conn. App. 701, 715 (2000). Though the defendants in these cases were not primarily engaged in the business of litigation, the court focused on the fact that permitting claims in such circumstances would chill the defendants' First Amendment right to petition the government. See, e.g., Zeller, 59 Conn. App. at 553-54.

Courts have subsequently followed the implication of this rule, holding that, in certain circumstances, a CUTPA claim can be based on the pursuit of litigation by a business not primarily engaged in litigation. For example, in Roncari Development v. GMG Enterprises, Inc., defendants were engaged in the airport valet parking business and had filed an allegedly frivolous challenge to the plaintiff's permit to construct a competing valet parking facility. 45 Conn. Supp. 408, 409-10 (1997). In a thorough opinion, the court permitted a CUTPA claim because the plaintiff had adequately pled that the frivolous challenge met the "sham litigation" exception to the Noerr-Pennington doctrine. Id. at 432-33; see also Jarrow Formulas, Inc. v. International Nutrition Co.,

175 F. Supp. 2d 296, 311-12 (D. Conn. 2001) (prior patent litigation could provide the basis for a CUTPA claim where plaintiff adequately alleged that the prior litigation was a sham); Gamlestaden PLC v. Backstrom, 1995 WL 326047, at *11 (Conn. Super., May 16, 1995) (denying motion to strike a CUTPA claim based on prior litigation where it could not be determined on the pleadings whether the prior litigation was a sham). There is no indication that McCann, its forerunners, or its progeny meant to displace this line of cases.

In applying the holding of McCann to CUTPA claims arising out of litigation activity, it is more consistent with prior caselaw and more reasonable to ask whether the subject matter of the underlying litigation activity is merely incidental to the defendant's primary trade or whether by engaging in such litigation the defendant sought to obtain some benefit directly related to its primary trade. On this approach, litigation may be adequately related to one's primary trade to satisfy the rule in McCann even though litigation itself is not one's primary trade.

Taking this approach, the court does not conclude that Allstate's alleged pattern of filing frivolous suits to intimidate healthcare professionals and prevent them from filing insurance claims is merely incidental to Allstate's business. See Complaint ¶¶ 37-38. Allstate admits that it is "in the business of reviewing claims and challenging claims when necessary." Allstate Reply at 5. And there can be no dispute that it is or should be in the business of paying legitimate claims as well. The subject matter of the Prior Action is directly related to these aspects of Allstate's business, and, granting inferences in favor of the plaintiff, the alleged pattern of lawsuits could constitute an unscrupulous or unethical course of conduct designed to limit its obligations to pay valid

claims.  Accordingly, at this stage, the court cannot conclude that Passaro-Henry has failed to state a claim under CUTPA.

IV.    **CONCLUSION**

For the foregoing reasons, Smith & Brink's Motion to Dismiss Counts Four, Five and Six (Doc. No. 19) is **GRANTED**.  Allstate's Motion to Dismiss (Doc. No. 23) is **GRANTED IN PART** with respect to Counts Four and Six and **DENIED IN PART** with respect to Count Five.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 15th day of December 2010.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge